IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID WILLIAMS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **01-986-WDS** |
| | ) | |
| **ILLINOIS DEPARTMENT OF CORRECTIONS, et al.**, | ) ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff David Williams is in the custody of the Illinois Department of Corrections and housed at Menard Correctional Center. Plaintiff brings suit pursuant to 42 U.S.C. § 1983 for the vindication of his constitutional rights. **(Doc. 1).** Before the Court is defendant Dr. Roderick L. Matticks' motion for summary judgment. **(Doc. 40).** Dr. Matticks is named only in Count 2 of the complaint, which alleges that he, Dr. Kumar and physician's assistant Gerst "acted with deliberate indifference, and with malice by knowingly withholding [prescribed medications] from plaintiff," causing plaintiff to suffer "unneeded traumatic experiences," and placing him in "jeopardy of death." **(Doc. 1, p. 5).**

Dr. Matticks argues that: (1) plaintiff failed to exhaust administrative remedies for any alleged wrongs occurring before October 27, 2000, before filing suit, as required by 42 U.S.C. § 1997e(a); (2) there is no evidence of deliberate indifference and no material questions of fact that would preclude summary judgment; and (3) he is entitled to qualified immunity, or at least "good faith" immunity.  Plaintiff counters that the documentary evidence supports his claim, although his focus is on pre October 27, 2000, events. **(Doc. 46).** Plaintiff cites his March 21,

2001, grievance regarding medication distribution as evidence that he has exhausted administrative remedies.  **(See Doc. 46, Exhibits, 4/30/01 letter denying 3/21/01 grievance).**

<u>**Failure to Exhaust Administrative Remedies**</u>

The Court of Appeals for the Seventh Circuit held in *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999), that exhaustion of administrative remedies, while not jurisdictional *per se*, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy.  Exhaustion of administrative remedies is required before a case may be brought, even if exhaustion is accomplished during pendency of the case. **See 42 U.S.C. § 1997e(a);** *Perez***, 182 F.3d at 534-37; and** *Booth v. Churner***, 532 U.S. 731, 739 (2001).**  "Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman***, 196 F.3d 727, 735 (7th Cir. 2000).**  "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez,* **182 F.3d at 536.**

The grievance procedures applicable to the IDOC are set forth under Title 20 of the Illinois Administrative Code, Section 504.800 *et seq.*[1]  Basically, an inmate first takes his complaint to a correctional counselor; if this does not resolve the problem, he is to file a written grievance on an institutional form, which is then reviewed by a designated grievance officer. The grievance officer reports his or her findings and recommendations to the chief administrative

---

[1] Amendments effective September 1, 2001, including shortening the time period for initiating a grievance to 60 days after the incident is discovered, apply to some events and grievances in this case, but the amendments are not relevant to the Court's analysis.  **20 IL ADC 504.810.**

officer, i.e., the warden, and the warden advises the institutional decision.  In an emergency, an inmate may send his grievance directly to the warden.  If the warden determines that there is a substantial risk of imminent personal injury to the inmate, the grievance is to be decided within three days.  The inmate may appeal the warden's disposition of the grievance in writing to the director of the Department of Corrections within 30 days of the warden's decision. The director reviews the grievance and the responses of the grievance officer and warden, and determines whether the grievance requires a hearing before the Administrative Review Board.  If it is determined that the grievance is meritless or can be resolved without a hearing, the director will issue a final decision; otherwise, the grievance is referred to the Administrative Review Board, which may hold hearings and examine witnesses.  The Board submits a written report of its findings and recommendations back to the director, who than makes a final determination.  ***See 20 Ill.Adm.Code § 504.810-850 (1998).***

Plaintiff asserts in the complaint that he "initiated, followed through and completed all requirements of the Department of Corrections' grievance proceedure [sic] mandates." **(Doc. 1, p. 3).**  Plaintiff contends that all his grievances were denied, and he refers the Court to copies of grievances accompanying the complaint, as well as supplemental documentation he has filed.

A review of the documentation submitted by plaintiff reveals two grievances regarding the denial of medication were filed– one dated December 5, 2000, and another dated March 21, 2001.  **(Doc. 1, Exhibits (12/5/00 grievance); and Doc. 46, Exhibits (4/30/01 letter from ARB denying 3/21/01 grievance)).**  Plaintiff's deposition testimony indicates that Count 2 is meant to encompass the deprivation of medication prior to his October 27, 2000, cardiac incident, as well as the approximately two week period prior to the filing of his December 5, 2000, grievance,

which would have been after the cardiac incident.  **(Doc. 40, Exhibit 3, pp. 9 and 14-15).**

Dr. Matticks is mentioned in the December 5, 2000, grievance as having prescribed medications for plaintiff.  Plaintiff complained that in the two week period preceding his grievance (approximately 11/21/00-12/5/00) he followed the procedures for requesting refills of his prescriptions, but he never received refills.  Plaintiff opined: "I presonally [sic] feel staff in the Health Care Unit is deliberately indifferent to my serious medical needs."  Plaintiff requested that, "the medical staff or whomever is responsible for getting out ordered medications to get on their job."  The counselor responded by reporting that the health care unit informed him that plaintiff was receiving requested medications in a timely manner.  Plaintiff has presented no documentation showing that he pursued the December 2000 grievance through the administrative gauntlet, but defendant Matticks apparently concedes that plaintiff has exhausted administrative remedies relative to this particular grievance and time period.  Therefore, the Court may exercise subject matter jurisdiction over the alleged deprivation of medication during the period between approximately November 21st and December 5th, 2000 (after the cardiac incident).

Plaintiff's grievance dated March 21, 2001, is not in the record.  However, there is a letter dated April 30, 2001, indicating that it pertained to "Medication Distribution and (Injury/incident 11/13/00;" no time period or other specifics are noted.  **(Doc. 1, Exhibits (4/30/01 letter from ARB to plaintiff)).**  The Administrative Review Board denied that grievance, meaning plaintiff has exhausted administrative remedies relative to that particular incident.  Although the Court is unclear on the specifics of the March 21, 2001, grievance, the affidavit of Terri L. Anderson, the Administrative Review Board chairperson, states that a records search has indicated that no grievances regarding the denial of medication for the time

period *prior* to October 27, 2000, were submitted to the Board by plaintiff.  **(Doc. 40, Exhibit 2).** By implication, the Court can conclude that the March 21, 2001, grievance did not pertain to the deprivation of medication *prior* to the October 27, 2000, cardiac incident.  Consequently, there is no evidence that plaintiff exhausted administrative remedies relative to the denial of medication prior to October 27, 2000, and the weight of the evidence satisfies the defendant's burden on the issue.  Therefore, the Court lacks subject matter jurisdiction over any deprivation of medication occurring prior to October 27, 2000, which plaintiff may have intended to pursue in Count 2; accordingly, defendant's motion for summary judgment should be granted in that respect.

## The Merits of Count 2

Defendant Matticks argues that there is no evidence of deliberate indifference on his part, and no material questions of fact that would preclude summary judgment in his favor on Count 2.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett***, 477 U.S. 317, (1986).**  The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. ***See  Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).**  Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings, more substantial evidence must be presented at this stage.  "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888 (1990).**  Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties" **(*Anderson*, 477 U.S. at 247)**, or by "some metaphysical doubt as to the material facts, (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))**."

As drafted, Count 2 satisfies the liberal notice pleading standard, but it is otherwise devoid of details.  However, those missing details were brought out during plaintiff's deposition.  **(*See* Doc. 40, Exhibit 3).**  Plaintiff explains that for a period of approximately two weeks prior to December 5, 2000, he did not receive prescribed medications for his hypertension, "because they were changing pharmacists."  **(Doc. 40, Exhibit 3, pp. 6-9).**  Plaintiff acknowledges that defendant Matticks prescribed necessary medications, complete with refill authorizations, but he complains that he was unable to obtain the authorized refills.  **(Doc. 40, Exhibit 3, pp. 8-12;** *see also* **Doc. 1, Exhibits (11/1/00 medical notes and prescription order, including refill authorization, for period between 11/1/00 and 2/28/01)).**  Plaintiff considers Dr. Matticks liable for his not receiving his refills because:

> He just was involved in not giving me my medication period.  He is a doctor.  He is supposed to stand on that and let the CMT's know how serious the fact is, that I need my medication.
>
>                       \* \* \*
>
> He holds some responsibility to that fact because he is a doctor.
>
>                       \* \* \*
>
> I thought he was wrong for not making sure I got my medication.  It was his

>responsibility.  He is a doctor.  He is in charge of me.  You know, the same thing if I was [sic] your doctor.  I'm going to make sure you're taken care of.  You know, I'd have to go to the pharmacy and get your medication personally.

**(Doc. 40, Exhibit 3, pp. 13-15).**

Plaintiff also asserts that he informed Dr. Matticks orally and in writing that "they" were not giving him his medication, all to no avail.  **(Doc. 40, Exhibit 3, p. 16).**  However, plaintiff acknowledges that he has no documentation to support that assertion.  **(Doc. 40, Exhibit 3, p. 16).**

According to Dr. Matticks' affidavit, he did not see plaintiff after he discharged plaintiff from the infirmary on November 1, 2000, but at that time he renewed a host of medications, complete with refill authorizations to carry plaintiff through February 28, 2001.  **(Doc. 40, Exhibit 1).**  Dr. Matticks swears that it is not his responsibility to personally administer medications, or to obtain them for his patients from the prison pharmacy, or to administer them to the patient.  **(Doc. 40, Exhibit 1).**  Matticks asserts that plaintiff did not complain to him orally or in writing, and no one else made him aware of the fact plaintiff was not receiving prescribed medication.  **(Doc. 40, Exhibit 1).**   Matticks explains that nursing staff would receive complaints about not being able to get a medication refilled, and Dr. Feinerman, the medical director, would handle such an issue.  **(Doc. 40, Exhibit 1).**

Generally, the Eighth Amendment obligates prison officials to "provide humane conditions of confinement; . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" ***Farmer v. Brennan*, 511 U.S. 825, 834 (1994);** *see also* ***Estelle v. Gamble*, 429 U.S. 97 (1976).** The Eighth Amendment is violated when an official exhibits "deliberate indifference"--when an

official "knows of and disregards an excessive risk to inmate health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ***Farmer*, 511 U.S. at 837.** This standard is subjective, and is the equivalent of recklessness in the criminal law sense. ***Id*.** Mere negligence will not create liability, nor will the provision of medical treatment other than that preferred by the inmate. ***Estelle*, 429 U.S. at 107;** *see also* ***Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984).**

Personal involvement is a prerequisite for individual liability in a civil rights action such as this; a defendant must have caused or participated in an alleged constitutional deprivation to incur liability. ***Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983); 42 U.S.C. § 1983.** The doctrine of *respondeat superior* cannot be used to impose Section 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights. ***Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997).** However, supervisory liability will be found if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. ***Lanigan*, 110 F.3d at 477.** Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not "personally involved" so as to incur liability. ***Id*.** "Rather, 'supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'" ***Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-993 (7th Cir. 1988));** *see also* ***Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997).**

Aside from plaintiff's assertions that he informed Dr. Matticks that he had not received

8

his medications, it is clear that plaintiff believes Matticks should be accountable by virtue of the fact that Matticks is a doctor.   In essence, plaintiff is attempting to use a *respondeat superior* theory of liability.   In light of the undisputed fact that Matticks is not responsible for filling prescriptions or delivering medications to his patients, and the undisputed fact that nursing staff and Dr. Feinerman handle situations where a prescription is not filled or refilled, there is no apparent basis for liability or for inferring deliberate indifference.

In contrast, if plaintiff alerted Dr. Matticks that he was not receiving his medications, Matticks could conceivably be liable, if he acted with deliberate indifference, which plaintiff did not mention, indicate or otherwise imply in his deposition testimony.  (*See* **Doc. 40, Exhibit 3).** Furthermore, Matticks' affidavit *and* plaintiff's medical records do not show that plaintiff saw Dr. Matticks after November 1, 2000.  **(Doc. 40, Exhibits 1 and A).**  This Court finds the aforementioned evidence and lack of evidence sufficient to overcome the otherwise competing affidavits of plaintiff and defendant.  Therefore, defendant Matticks' motion for summary judgment should be granted.

### Claimed Immunities

Defendant Matticks claims qualified immunity and "good faith" immunity from liability on Count 2.  He does not offer sufficient argument on exactly why such immunities would attach.

### Recommendation

For the aforestated reasons, it is the recommendation of this Court that defendant Matticks' motion for summary judgment **(Doc. 40)** be granted.  More specifically, all claims relating to the alleged deprivation or medication prior to October 27, 2000, should be dismissed

from Count 2, without prejudice, because plaintiff has failed to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).  In addition, Dr. Matticks should be granted summary judgment on Count 2, and be dismissed as a defendant to this action, due to his lack of personal involvement and the lack of evidence of deliberate indifference on his part.

## Response Period

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have until **July 25, 2005,** to file written objections to this report and recommendation.

**Submitted: June 28, 2005**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**
